# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

U.S. District Court
Wisconsin Eastern

NOV - 9 2018

FILED
Stephen C. Dries, Clerk

In the Matter of the Search of: )
)
INFORMATION ASSOCIATED WITH THE )
CELLULAR DEVICES ASSIGNED CALL NUMBERS ) Case No. 18 · m · 743
(765) 374-9213 AND (317) 600-7518 THAT IS STORED )
AT PREMISES CONTROLLED BY SPRINT. )
)

## APPLICATION FOR A SEARCH WARRANT

I, Brian M. D'Arcy, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property: See attached affidavit and attachments hereby incorporated by reference.

The basis for the search under Fed. R. Crim P. 41(c) is:
☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of:
Evidence of a violation of Title 18, United States Code, Section 1951, as set forth in affidavit and attachments.

The application is based on these facts: See attached affidavit.

_____
Applicant's signature

Brian M. D'Arcy, FBI Special Agent
*Printed Name and Title*

Sworn to before me and signed in my presence:

Date: 11-9-18

_____
Judge's signature

City and State: Green Bay, Wisconsin

James R. Sickel, U.S. Magistrate Judge
*Printed Name and Title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICES ASSIGNED CALL NUMBERS (765) 374-9213 AND (317) 600-7518 THAT IS STORED AT PREMISES CONTROLLED BY SPRINT. | Case No. _____<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Brian D'Arcy, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with certain cellular telephones assigned call numbers (765) 374-9213 and (317) 600-7518 ("the SUBJECT PHONES"), that is stored at premises controlled by Sprint, a wireless telephone service provider headquartered at 6480 Sprint Parkway, Overland Park, Kansas 66251. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require Sprint to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been employed as such since July 2017. Upon graduation from the FBI Academy in Quantico, Virginia, I was assigned to the Milwaukee Division, Green Bay Resident Agency. Since arriving in Green Bay, I have been assigned to work on various criminal violations, to include fraud and

human trafficking. As a Special Agent of the FBI, I am authorized to investigate violations of the criminal laws of the United States, and am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Section 1951 (commonly known as "the Hobbs Act") have been committed, are being committed, and will be committed by the users of the SUBJECT PHONES. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, or fruits of these crimes as further described in Attachment B.

## PROBABLE CAUSE

5. On 04/20/2018 at 11:28 p.m., Appleton Police Department Officers were dispatched to a robbery at the CVS Pharmacy located at 700 West Wisconsin Avenue, Appleton, State and Eastern District of Wisconsin. After an initial investigation and following interviews with three victims, it was determined that three black male suspects entered the store and restrained Victim #1, a CVS employee, using yellow zip ties. The suspects then continued to the pharmacy area of the store, where one pointed a black pistol at the pharmacist, Victim #3, and told the pharmacist to open two safes. The other two suspects entered the safes and stuffed pillowcases full of prescription bottles, while the third suspect stole prescriptions off the pharmacy shelves. After seeing a CVS customer, Victim #2, walk up to the pharmacy counter,

2

the suspects fled from the store. The stolen prescription bottles contained Hydrocodone, Oxycodone, Morphine, Adderall, Ritalin, and other drugs. Medication counts are pending, but a CVS pharmacist has initially valued the loss at around $70,000.

6. Following the robbery, Appleton Police Department Investigator Neal Rabas was able to obtain security camera footage from the CVS store manager and view it. The surveillance cameras were able to capture the robbery on 04/20/2018, which occurred between 11:23 p.m. and 11:28 p.m.

7. After reviewing the video footage, Investigator Rabas was notified that Appleton Police Department Officers found discarded prescription medication bottles from CVS in the area of North Erb Street and West Parkway Boulevard, North of the CVS pharmacy. Officers continued to follow the discarded prescription bottles through Appleton. Bottles were located on North Erb Street, West Parkway Boulevard, North Division Street, West Wisconsin Avenue, North Drew Street, East College Avenue, South Lawe Street, East Fremont Street, South Oneida Street, Highway 441, and Interstate 41. Detective Rabas was informed that Officers located discarded bottles on Interstate 41 as far south as the Highway 21 interchange, near Oshkosh, Wisconsin.

8. Based on the locations of the empty prescription medication bottles that were recovered, Appleton Police Department Officer Matt Anderson was able to locate traffic camera footage of a white sedan with a sunroof in these same locations shortly after the robbery. While reviewing traffic camera footage, Officer Anderson specifically noted items being thrown out both sides of the vehicle while it turned off of College Avenue to go South on Lawe Street in Appleton, Wisconsin. Officer Anderson then went to the location where the vehicle made the turn and discovered a ripped CVS paper bag that had contained a prescription for Xulane and an

3

opened bottle of Dextroamphetamine Saccharate, Amphetamine Aspartate, Monohydrate Dextroamphetamine Sulfate, and Amphetamine Sulfate 15mg. While continuing to review traffic camera footage, Officer Anderson observed a white sedan with a sunroof consistent with the vehicle observed in the other videos turn eastbound on East College Avenue from North Drew Street at 11:30:45 p.m. on 04/20/2018. Occupants within the vehicle were observed discarding items from the vehicle at this location as well.

9. Utilizing license plate cameras located near Lawrence University on East College Avenue, the Appleton Police Department was able to obtain a license plate for the suspect vehicle: Indiana license plate number 684RON. The license plate was registered on a 2008 white Chevrolet Impala to an address of 1743 Bluewater Court, Indianapolis, Indiana 46229.

10. On 04/21/2018, a felony vehicle hold was issued by the Appleton Police Department for the 2008 white Chevrolet Impala with Indiana license plate number 604RON. After contacting the investigative division of the Indianapolis Metropolitan Police Department (IMPD) for assistance with locating the vehicle, the Suspect Vehicle was found at the listed address. A traffic stop was initiated by the IMPD and the driver was identified as Eric Owens, who was not in possession of a driver's license. The passenger was identified as Jalen Owens, who was believed to be the son of Eric Owens. The vehicle was impounded and an inventory was conducted. During the inventory of the vehicle, a Glock 9mm extended magazine with approximately 23 live rounds was located in the pocket behind the front passenger seat. An empty package of yellow, 14.5 inch Hyper Tough zip ties with UPC 681131168069, were located in plain-view on the floorboard of the front passenger seat.

11. On 05/11/2018, pursuant to a search warrant signed by United States Magistrate Judge Debra McVicker Lynch on 05/07/2018, Agents with the FBI Indianapolis field office

4

completed a search of the suspect vehicle bearing Indiana license plate number 604RON. During the search of the vehicle, a cable tie bag, 9mm magazine with 23 rounds, and one white pillow case were discovered and seized as evidence, amongst other items.

12. On 07/27/2018, a search warrant was signed by United States Magistrate Judge James R. Sickel permitting the search of the AT&T, Sprint, T-Mobile, US Cellular, and Verizon cell towers that provided cellular service to 700 West Wisconsin Avenue, Appleton, Wisconsin 54914, between 10:30 p.m. on 04/20/2018 and 12:30 a.m. on 04/21/2018. On 07/27/2018, the search warrant was served on AT&T, Sprint, T-Mobile, US Cellular, and Verizon ("the Service Providers").

13. On 09/17/2018, I reviewed an analysis of the records provided by the Service Providers pursuant to the search warrant signed by United States Magistrate Judge James R. Sickel on 07/27/2018. During my review, I observed that on 04/20/2018 cellular telephone number (765) 374-9213 made or received one phone call and/or text message in the vicinity of the Sprint cell phone tower that provided service to the CVS Pharmacy located at 700 West Wisconsin Avenue, Appleton, Wisconsin at 11:51 p.m. Additionally, telephone number (317) 600-7518 made or received one phone call and/or text message in the vicinity of the Sprint cell phone tower that provided service to the CVS Pharmacy at 12:27 a.m. The robbery of the CVS pharmacy occurred on 04/20/2018, between 11:23 p.m. and 11:28 p.m. Based on their location in the vicinity of the Sprint cell phone tower and the time at which the phone calls or text messages were made and/or received, cellular telephone numbers (765) 374-9213 and (317) 600-7518 were located in the vicinity of the CVS pharmacy during the time of the robbery. Additionally, telephone number (765) 374-9213 contains area code 765, which serves the state of Indiana, according to the website allareacodes.com. Telephone number (317) 600-7518 contains area

5

code 317, which serves the state of Indiana and the city of Indianapolis, according to the website allareacodes.com.

14. Due to the fact that the suspect vehicle bearing Indiana license plate number 684RON was traced back to Indianapolis, Indiana, it is believed that the subjects of the investigation are located in the Indianapolis area. Cellular telephone numbers (765) 374-9213 and (317) 600-7518 contain Indiana area codes and were present during the time of the CVS pharmacy robbery in Appleton, Wisconsin on 04/20/2018. Based on these facts, I submit that the information set forth in this affidavit provides probable cause to believe that the records described in Attachment B would identify which SUBJECT PHONES traveled to the Appleton, Wisconsin area on 04/20/2018 and later returned to Indiana. This information, in turn, will assist law enforcement in determining which persons were present during the robbery.

15. In my training and experience, I have learned that Sprint is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is

typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

16. Based on my training and experience, I know that Sprint can collect cell-site data about the SUBJECT PHONES. I also know that wireless providers such as Sprint typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

17. Based on my training and experience, I know that wireless providers such as Sprint typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as Sprint typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONES' users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

18. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

19. I further request that the Court direct Sprint to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or

7

control. Because the warrant will be served on Sprint, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

20. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Respectfully submitted,

_____
Brian M. D'Arcy
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on ___11-9-___, 2018

_____
Honorable James R. Sickel
UNITED STATES MAGISTRATE JUDGE

8

## ATTACHMENT A

**Property to Be Searched**

This warrant applies to records and information associated with the cellular telephones assigned call numbers (765) 374-9213 and (317) 600-7518, that are stored at premises controlled by Sprint ("the Provider"), headquartered at 6480 Sprint Parkway, Overland Park, Kansas 66251.

# ATTACHMENT B

## Particular Things to be Seized

### I. Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period of 04/18/2018 through 04/22/2018:

   a. The following information about the customers or subscribers of the Account:

      i. Names (including subscriber names, user names, and screen names);

      ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

      iii. Local and long distance telephone connection records;

      iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

      v. Length of service (including start date) and types of service utilized;

      vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

      vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

2

       viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

  b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

       i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

       ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of Title 18, United States Code, Section 1951 (commonly known as "the Hobbs Act") involving the cellular telephones assigned call numbers (765) 374-9213 and (317) 600-7518 during the period of 04/18/2018 through 04/22/2018.

3

# CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Sprint, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Sprint. The attached records consist of _____. I further state that:

   a.   all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Sprint and they were made by Sprint as a regular practice; and

   b.   such records were generated by Sprint's electronic process or system that produces an accurate result, to wit:

      1.   the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Sprint in a manner to ensure that they are true duplicates of the original records; and

      2.   the process or system is regularly verified by Sprint and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____     _____
Date                             Signature